UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                    Case Nos.:  3:15cr56/TKW/EMT
                                                   3:19cv1353/TKW/EMT

SHAWN RYAN GOODFLEISCH

_____/

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the court on Defendant's counseled "Motion to Vacate, Set-Aside or Correct Sentence Pursuant to Title 28 U.S.C. § 2255" (ECF No. 119). The Government filed a response (ECF No. 121), and Defendant filed a reply (ECF No. 124). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b). After a review of the record and arguments presented, the undersigned recommends that the § 2255 motion be denied without a hearing. *See* Rules 8(a) and (b), Rules Governing Section 2255 Proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Indictment

On October 21, 2015, Defendant Shawn Ryan Goodfleisch (Goodfleisch) was charged in a three-count superseding indictment (ECF No. 21).    Count One charged that Goodfleisch knowingly received child pornography between January 1, 2014 and October 14, 2014, in violation of 18 U.S.C. §§ 2252A(a)(2) and 2252A(b)(1). Count Two charged that on October 14, 2014, Goodfleisch knowingly possessed child pornography involving a prepubescent minor and a minor who had not attained twelve years of age in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). And Count Three charged that on October 14, 2014, Goodfleisch knowingly destroyed evidence within the Government's lawful authority by remotely accessing a laptop computer and using a computer wiping program to delete and attempt to delete the contents of said computer in violation of 18 U.S.C. § 2232(a).

### Factual Basis for Charges

As set forth in the final pre-sentence investigation report (PSR) (ECF No. 90) (and in the Eleventh Circuit Court of Appeal's opinion affirming Goodfleisch's convictions (ECF No. 113)), the indictment resulted from an undercover investigation by Detective Chris Wilkinson of the Pensacola Police Department into

a peer-to-peer computer network[1] known as BitTorrent.    The goal of Wilkinson's investigation was to identify individuals sharing child pornography through this network.    Wilkinson identified a computer with a particular internet protocol (IP) address as a potential download source for files of investigative interest, and he successfully connected to that computer and downloaded twenty-seven video files that were being publicly shared through the computer.    Law enforcement then tracked the computer's IP address to a physical address occupied by Michael and Rhonda Jones and obtained a search warrant for the premises.[2]    The premises included a single-wide trailer where the Joneses resided and a large, detached, block building the Joneses used as their ministry building.    Goodfleisch was staying in a room in the larger, detached building with the Jones's permission.    When law enforcement agents arrived to execute the search warrant on October 14, 2014, they learned the two buildings had different addresses; the Joneses, however, provided consent to search both structures.

---

[1] Detective Wilkinson explained at Goodfleisch's trial that a peer-to-peer network allows a computer to connect directly to another computer on the internet without going through a centralized server (ECF No. 105 at 63–65).

[2] The search warrant and related materials are filed under seal in Case No. 3:14mj151/CJK (N.D. Fla.).

Case Nos.: 3:15cr56/TKW/EMT; 3:19cv1353/TKW/EMT

During the search warrant's execution Mr. Jones and Detective Wilkinson entered Goodfleisch's room, observed Goodfleisch in the room, and saw a BitTorrent icon or BitTorrent software on the open screen of Goodfleisch's Sony Vaio laptop computer.[3]   Law enforcement asked Goodfleisch to step outside; Goodfleisch did so, leaving his cell phone and the three computers behind.   While law enforcement was in the process of securing a second warrant specifically authorizing searches of the three computers (*see* Case No. 3:14mj152/CJK), Goodfleisch borrowed a cell phone from a friend named Timothy Joey Livingston. Goodfleisch then used Mr. Livingston's phone to remotely access his Sony Vaio laptop through the TeamViewer program in an attempt to "wipe" some of the child pornography from his laptop using the CCleaner program.[4]   Mr. Livingston testified at Goodfleisch's trial that when he realized what Goodfleisch had done, Livingston "uninstalled the [TeamViewer] application" (ECF No. 106 at 72–73).

---

[3] In addition to the Sony Vaio laptop, law enforcement located two other computers in a separate area of the ministry building.

[4] TeamViewer allows remote access from a cell phone or computer into a remote (or "target") computer so long as the user has the target computer's security passcode (ECF No. 105 at 105; ECF No. 106 at 71–72, 86–87).   The IP address reflected on the log file of the target computer would be the IP address of the computer or phone used to access the target computer remotely (ECF No. 106 at 141).   CCleaner is a program that can delete data from a computer, and one of its purposes is to securely wipe, leaving no trace of evidence (ECF No. 106 at 138–39, 154).

Mr. Livingston contacted law enforcement a day or so after uninstalling TeamViewer and allowed law enforcement to search his phone because he was concerned about having "potentially been involved in a crime" (*id.* at 73).    Despite Goodfleisch's attempts to remove incriminating evidence from the Sony Vaio laptop, law enforcement recovered multiple BitTorrent files containing child pornography.    Goodfleisch was indicted nearly a year later.

Trial

Assistant Federal Public Defender (AFPD) Thomas Keith represented Goodfleisch at trial in September 2016 (ECF Nos. 105–107).    The Government presented the testimony of Detective Wilkinson, computer expert Nathan Cruz, Timothy Joey Livingston, and Michael and Rhonda Jones.    Of note, Mr. Jones testified that Goodfleisch admitted to him that he had looked at "child porn" and apologized for what had happened (ECF No. 106 at 32–33).    Mrs. Jones testified Goodfleisch apologized to her as well, for "all the trouble going on" (*id.* at 92).

The defense presented brief testimony of numerous witnesses to establish either that Goodfleisch was not at home at the time of some of the downloads ("alibi witnesses") or that others had access to his computer.    Goodfleisch testified in his own behalf and denied having downloaded child pornography or even having seen

it on his computer; he also denied using Mr. Livingston's cell phone to wipe child pornography from his computer, claiming he was merely trying to access his sister's email address.   Goodfleisch also testified he spent a lot of time away from his quarters/room in the Jones's ministry building and that Mr. Jones or others could have had access to his computer, which he sometimes left in an open space in the building.   Finally, Goodfleisch denied having told the Joneses he had downloaded child pornography, although he admitted apologizing to them, presumably for law enforcement's intrusion.

After both parties rested, Goodfleisch moved for a judgment of acquittal on Count Three, arguing the Government had not proven that the second search warrant (which authorized searches of the three computers) had been issued before he remotely deleted child pornography files from the Sony Vaio laptop computer (ECF No. 106 at 286–87).   The court denied the motion, finding the first warrant provided authorization to conduct a search of both buildings, and the Government's decision to get a second warrant specifically for the computers[5] did not invalidate either the initial warrant or law enforcement's seizure of the computers (ECF No.

---

[5] The transcript reflects the court referred to obtaining a second warrant specifically for the "buildings" rather than the computers, but the context of the court's statement makes clear the court was referring to the computers (*see* ECF No. 107 at 2).

107 at 2–4).    The court also noted the owners of the property had given consent to search the property (*id.* at 3–4).    The jury convicted Goodfleisch on each count.

### Motion for a New Trial

Goodfleisch filed a motion and supplemental motion for a new trial (ECF Nos. 73, 77).    Goodfleisch argued he was prejudiced by counsel's admittedly mistaken assumption that the times certain torrent files[6] were downloaded onto his computer reflected local time rather than UTC (Coordinated Universal Time)[7] (ECF No. 73 at 1–2).    Goodfleisch maintained that this error—specifically as to the torrent files listed in Government's Trial Exhibits 14 and 15—essentially gutted his defense that he was away from his quarters and computer on the specific days and at the specific times torrent files were downloaded (*id.* at 3).    Goodfleisch further argued the alibi evidence he presented lost its significance considering the UTC and added he had found new alibi evidence that could be presented in light of the conversion from UTC to local time.    Goodfleisch asserted the new alibi evidence was "newly discovered" because defense counsel had not previously considered it significant

---

[6] Detective Wilkinson testified that a torrent is a pointer file that has all the information about what the user is sharing (ECF No. 105 at 67).

[7] UTC is four or five hours ahead of local time, depending on whether Daylight Savings Time (DST) is in effect (*see* ECF No. 73 at 1–2; *cf.* ECF No. 106 at 132, 138, 152 (testimony of Nathan Cruz as to the time discrepancy and effect of DST and time zones on the calculation)).

due to an error—not due to a lack of diligence.    Goodfleisch claimed the new alibi evidence would have created a reasonable doubt and resulted in a different verdict. Finally, Goodfleisch claimed that evidence establishing he was neither at his quarters nor in possession of his computer "even one time" when a child pornography torrent was downloaded would be strong evidence that another person was responsible for downloading the illegal files in Goodfleisch's absence (ECF No. 77 at 4).

The district court denied Goodfleisch's motion for a new trial (ECF No. 80). In so doing, the court noted that at trial, Nathan Cruz, a computer forensic analyst with the Department of Homeland Security, testified child pornography files had been downloaded to Goodfleisch's computer on sixty-three separate days between January 2014 and October 2014, and that on some days there were multiple downloads (ECF No. 80 at 3–4).    The court also noted that despite Goodfleisch's efforts to remotely wipe his laptop, law enforcement located more than 5000 torrent files including 109 images of child pornography and 14,000 images of child erotica (*id.* at 3).    The court also pointed to Mr. Cruz's testimony that it was possible to access a computer remotely and log into files as if seated at the computer. Moreover, the court noted, Goodfleisch's laptop computer had been remotely accessed by Goodfleisch using both his personal iPhone and, on the date the search

warrant was executed, using a phone identified as "Joey's iPhone," with which TeamViewer was used to delete files (*id.* at 4–5).   Significantly, the court noted that defense counsel cross-examined the witness about the UTC timing without alerting the court to any misunderstanding about the timing or any other evidence that would have prejudiced the defense, and that the defense, in fact, presented alibi testimony from several witnesses—some of which was not undermined by the time differential—as well as testimony demonstrating that Goodfleisch occasionally left his laptop in an area where others could access it (*id.* at 5).

The court concluded the requirements for granting a new trial had not been met.[8]   The court found that the allegedly new alibi evidence was not "newly discovered" and that the circumstances did not show "due diligence" (ECF No. 80 at 8).   The court further found that the new alibi evidence was not material because receipt of child pornography on just a single occasion was sufficient to support the verdict and, presumably, Goodfleisch did not have alibi evidence for each of the sixty-three downloads (*id.* at 9–10).   Also, the "materiality" of the allegedly new

---

[8] In assessing a motion for a new trial based on newly discovered evidence, the court considers whether (1) the evidence was not discovered until after trial; (2) the failure to discover the evidence earlier was not due to the defendant's lack of diligence; (3) the evidence is material, and not merely cumulative or impeaching; and (4) the evidence probably would have produced a different result at trial (ECF No. 80 at 7) (citing *United States v. Scrushy*, 721 F. 3d 1288, 1304–05 (11th Cir. 2013)).

alibi evidence was markedly diminished by the trial testimony of Goodfleisch's former girlfriend, that Goodfleisch could start a download (which could take several hours), leave the computer running, and allow it to finish the process while he was away (*id.* at 9). The court opined the new evidence was cumulative to the alibi evidence presented at trial, noting the jury rejected the alibi defense despite the testimony of seven witnesses (*id.* at 9–10). In sum, the court concluded that additional, similar, alibi evidence would not likely produce an acquittal given the "overwhelming evidence" against Goodfleisch (*id.* at 10).

<u>Sentencing</u>

As set forth in the PSR, Goodfleisch had a total offense level of 37 and a criminal history category of I (ECF No. 90, PSR ¶¶ 58, 62). The applicable sentencing guidelines range was 210 to 262-months imprisonment (*id.*, ¶ 97). Pursuant to statute, the minimum term of imprisonment on Count One (receiving child pornography) was five years, and the maximum was 20 years. The maximum term of imprisonment on Count Three (destruction of evidence) was five years.[9]

---

[9] The Government conceded that Count Two (possession of child pornography) would be dismissed at sentencing so as to avoid any potential double jeopardy issues (ECF No. 108 at 2; ECF No. 90, PSR ¶ 10).

Case Nos.: 3:15cr56/TKW/EMT; 3:19cv1353/TKW/EMT

At sentencing on February 23, 2017, the Government conceded one of Goodfleisch's objections to the guidelines calculation.[10] This reduced the total offense level from 37 to 33 and significantly reduced the applicable guidelines range to 135 to 168 months (ECF No. 108 at 2).    The court imposed a below-guidelines sentence of 120-months imprisonment on Count One and a concurrent term of 60-months imprisonment on Count Three, and it dismissed Count Two on the Government's motion (ECF No. 94).

Appeal

Goodfleisch appealed, represented by AFPD Megan Saillant, and raised two issues.    First, Goodfleisch claimed he was entitled to a judgment of acquittal on Count Three because law enforcement was not yet authorized to seize and search his laptop at the time he remotely destroyed incriminating evidence stored on the laptop. *See United States v. Goodfleisch*, 723 F. App'x 931, 932–33 (11th Cir. 2018).    The Eleventh Circuit disagreed.    The court noted the existence of two search warrants,

---

[10] The Government explained that although an argument could be made that Goodfleisch should receive the four-level enhancement for possessing images that portrayed sadistic or masochistic conduct, it was a "close call"; the Government thus agreed to give Goodfleisch the benefit of the doubt (ECF No. 108 at 2, 34).    The court later stated that had the Government not conceded the issue, it would have overruled Goodfleisch's objection, leaving the higher guidelines range intact (ECF No. 108 at 55).

the second of which issued about thirty minutes after Goodfleisch remotely destroyed incriminating files.    *Id.* at 933.    The Eleventh Circuit stated as follows:

> The question, therefore, is whether the first warrant authorized the officers to search the large block building where Goodfleisch was living and seize his laptop.    The building is one of two structures on the lot.    The other is a single-wide trailer.    The trailer's address is 1707 Bainbridge Avenue.    The building's address is 1701 Bainbridge Avenue.    Goodfleisch was living in the building with the permission of its owners, the Joneses, who occupied the trailer.
>
> The first warrant lists the address of the premises to be searched as "1701 Bainbridge Avenue, Pensacola, Florida 32507"—the building's address.    But Attachment A to the first warrant, which further describes the location to be searched, incorrectly attributes that address to the trailer, describing "[t]he residence [as] a single-wide trailer located at 1701 Bainbridge Avenue, Pensacola, Florida 32507." The incorrect attribution of the building's address to the trailer in the description does not, however, invalidate the district court's conclusion that the first warrant covered the building.
>
> .  .  .
>
> Importantly, the warrant itself refers only to "[t]he premises located at: 1701 Bainbridge Avenue, Pensacola, Florida 32507." Although Attachment A incorrectly attributes that address to the trailer, the photo and description support the conclusion that the trailer and building are part of a single, covered property.    The description notes both structures are on one lot.    It also records the presence of "a wooden fence that connects the single-wide trailer to the large block building."    Finally, the description identifies a shared "green mailbox located directly in front of the large block building."    We agree, given these facts, with the district court's conclusion that the property covered by the first warrant included the building.

*Goodfleisch*, 723 F. App'x at 933–34.   The Eleventh Circuit thus concluded that the first warrant, which authorized a search of computers found on the property, encompassed Goodfleisch's laptop and, furthermore, that considering the nature of the crime, a search of all computers on the property, including the laptop, was reasonable.   *Id.* at 934 (citation omitted).   Therefore, Goodfleisch was not entitled to a judgment of acquittal on Count Three.

Second, Goodfleisch challenged the district court's denial of his motion for a new trial based on the newly discovered alibi evidence, which, Goodfleisch contended, could have shown he was not at his computer when the illegal material was accessed.   The Eleventh Circuit found that the failure to discover the alibi evidence cited in support of the motion for a new trial resulted from a lack of due diligence and that the district court, therefore, did not err in denying the motion.[11]

---

[11] In support of its "lack of due diligence" finding, the Eleventh Circuit stated: (1) "discovery in defense counsel's possession always accurately reflected that some of the [download] times were *not* in UTC . . . counsel would, therefore, have discovered the alibi evidence before trial had he exercised due diligence in examining the Government's discovery"; and (2) "[u]ntil trial, defense counsel mistakenly believed the times listed in the Government's discovery were *all* in Coordinated Universal Time (UTC)."   *Goodfleisch*, 723 F. App'x at 934 (emphases added). Counsel's take is different, however.   AFPD Keith stated in his motion for a new trial that it is "not specifically noted or stated in *Exhibits 14 and 15* that the time is UTC time (contrary to Exhibit 13 in which the times are specifically stated as 'UTC' time)," and he therefore assumed the time [reflected on Exhibits 14 and 15] was local time" (ECF No. 73 at 2) (emphasis added).   The trial exhibits are no longer available for review.

Case Nos.: 3:15cr56/TKW/EMT; 3:19cv1353/TKW/EMT

Goodfleisch did not file a petition for a writ of certiorari, but he timely filed the instant § 2255 motion on May 2, 2019.[12]    As grounds for relief, Goodfleisch raises two ineffective assistance of trial counsel claims.    More specifically, Goodfleisch alleges trial counsel was constitutionally ineffective in failing to (1) move to suppress evidence seized as a result of the allegedly illegal search of his laptop computer, and (2) investigate and prepare an alibi defense demonstrating he was not present when "some of the illegal files were downloaded" (ECF No. 119 at 3, 9).

## ANALYSIS

General Standard of Review

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing."    *Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014). A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise

---

[12] When a defendant does not file a petition for a writ of certiorari with the United States Supreme Court, his judgment of conviction becomes final on the date on which the time for filing such a petition expired (i.e., ninety days after entry of the court of appeal's judgment).    *Clay v. United States*, 537 U.S. 522, 525 (2003); *Kaufmann v. United States*, 282 F.3d 1336, 1338 (11th Cir. 2002).

Case Nos.: 3:15cr56/TKW/EMT; 3:19cv1353/TKW/EMT

subject to collateral attack.    *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).    "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"    *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

The law is well established that a district court need not reconsider issues raised in a section 2255 motion that have been resolved on direct appeal.    *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).    Once a matter has been decided adversely to a defendant on direct appeal, therefore, it cannot be re-litigated in a collateral attack under section 2255.    *Nyhuis*, 211 F.3d at 1343 (quotation omitted).    Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.    *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or be couched in different language . . . or vary in immaterial respects").

Conversely, because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been, but were not, raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Granda v. United States,* 990 F.3d 1272, 1286 (11th Cir. 2021) (citation omitted); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011); *Lynn v. United States,* 365 F.3d 1225, 1234–35 (11th Cir. 2004). An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." *Lynn*, 365 F.3d at 1232 n.14 (quoting *Mills*, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes either (1) cause for not raising the ground on direct appeal *and* actual prejudice resulting from the alleged error or, alternatively, (2) he is "actually innocent." *Bousley*, 523 U.S. at 622 (citations omitted); *Granda*, 990 F.3d at 1286; *Lynn*, 365 F.3d at 1234.

To show cause sufficient to excuse a procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235. A

meritorious claim of ineffective assistance of counsel can constitute cause. *See Nyhuis*, 211 F.3d at 1344. Actual prejudice is more than just the possibility of prejudice; "it requires that the error worked to the petitioner's actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Granda,* 990 F. 3d at 1288 (quotation omitted).

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012). In order to prevail on a claim of ineffective assistance of counsel, a defendant must show (1) his attorney's representation fell below "an objective standard of reasonableness," and (2) a reasonable probability exists that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that [ ]he was prejudiced by that performance." *Demar v. United States*, 228 F. App'x 940, 950 (11th Cir. 2007)

(quotation marks, brackets, and citations omitted);[13] *see also Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances."   *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).   Reviewing courts "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."   *Strickland*, 466 U.S. at 689; *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").   Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.   *Strickland*, 466 U.S. at 689.   To show counsel's performance was unreasonable, a defendant must establish

---

[13] Neither the Federal Rules nor the Local Rules of this Court proscribe the citation of unpublished opinions.  *See* Fed. R. App. P. 32.1(a).  The Eleventh Circuit rules provide that "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315.    When reviewing the performance of experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."    *Chandler,* 218 F.3d at 1316 n.18.

To establish prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694.    "The likelihood of a different result must be substantial, not just conceivable."    *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*).    For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."    *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 753 (11th Cir. 2010).    A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."    *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).    Or in the case of alleged sentencing errors, a defendant must demonstrate there is a reasonable probability

that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level.    *Glover v. United States*, 531 U.S. 198, 203–04 (2001).    A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."    *Id.* at 203.

It is the defendant's burden to provide factual support for his contentions regarding counsel's performance.    *See Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).    Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.    *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1332–34 (11th Cir. 2012); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)); *Dale v. United States*, 809 F. App'x 727, 728 (11th Cir. 2020) (citing *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992)).    A defendant must identify the errors or omissions of which he complains and explain how they affected the outcome of the proceedings.    *Boyd*, 697 F.3d at 1333.    Furthermore, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim.    *Hollis v. United States,* 958 F.3d 1120, 1124 (11th Cir. 2020) (counsel not constitutionally ineffective for failing to raise meritless objection to use of prior drug convictions as

predicate offenses under ACCA); *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (citing *Freeman v. Att'y Gen., Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008)) (counsel not ineffective for failure to raise objection that was counter to the express language of the guidelines commentary).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "'the cases in which habeas petitioners can properly prevail . . . are few and far between.'" *Chandler*, 218 F.3d at 1313 (quoting *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc)). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done but, rather, whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). Lawyers in every case could have done something more or different, and the issue is not what is possible but only what is constitutionally compelled. *Chandler*, 218 F.3d at 1313. "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). As the Sixth Circuit has

framed the question, it is not whether counsel was inadequate, but rather, whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is framed, under the prevailing case law, it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance. A defendant's belief that a certain course of action counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008). Hence, not every claim of ineffective assistance of counsel warrants an evidentiary hearing. *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)). To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief. *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015). A hearing is not required on frivolous claims, conclusory allegations

unsupported by specifics, or contentions that are wholly unsupported by the record. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).    Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.    *Lynn*, 365 F.3d at 1239.    Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

Ground One—Failure to challenge search

In the first ground for relief, Goodfleisch claims AFPD Keith was ineffective for failing to move to suppress evidence obtained as a result of what Goodfleisch contends was an illegal search.    Goodfleisch asserts law enforcement's search of his personal laptop was illegal because he never consented to the original entry into his living quarters, and it was observations made during that entry that provided the basis for the second search warrant.

As discussed above, Michael and Rhonda Jones lived in a trailer at 1707 Bainbridge Avenue, alongside the larger "ministry building" containing the room in which Goodfleisch stayed.    The original search warrant described the location to be searched as a single-wide trailer at 1701 Bainbridge Avenue, although this was

the address corresponding to the ministry building.[14]   When law enforcement arrived to execute the search warrant, they discovered the discrepancy in the address. Mr. Jones provided consent to search both the trailer—1707 Bainbridge—and the ministry building—1701 Bainbridge (ECF No. 105 at 95).   After a search of the Jones's trailer and the computers therein revealed no criminal activity, Mr. Jones accompanied law enforcement officers to the ministry building so they could continue the search.   Mr. Jones and Detective Wilkinson entered Goodfleisch's room, and Wilkinson noticed that Goodfleisch's Sony Vaio laptop computer was open and contained some type of peer-to-peer software, either uTorrent or BitTorrent, that could be used for file sharing (*id.* at 97; *see also* Case No. 3:14mj152/CJK, ECF No. 2 at 19–20).   Goodfleisch declined to give law enforcement consent to search his computer, and, out of an abundance of caution, they sought a second federal search warrant for this computer as well as two additional computers found in the studio area of the ministry building (ECF No. 105 at 100–01; *see also* Case No. 3:14mj152/CJK, ECF No. 2 at 21).   The second search warrant contained a specific description of Goodfleisch's Sony Vaio laptop,

---

[14] The last digit of the house number had fallen off the trailer, and the address of "1701" was reported because "the discoloration is obvious on the siding reflecting that the number '1' was previously attached" (Case 3:14mj151/CJK, ECF No. 1 at 2).

which, Goodfleisch says, agents observed while they were in his room without his consent.    After securing the second search warrant, law enforcement accessed Goodfleisch's laptop computer and saw a notification indicating a "drive wipe" had completed successfully and the TeamViewer program had run (ECF No. 105 at 104–05).    Goodfleisch's attempt to delete all incriminating evidence was unsuccessful.

Goodfleisch asserts counsel should have moved to suppress the fruits of the search because Mr. Jones did not have authority to consent to law enforcement entering Goodfleisch's room.    *See Chapman v. United States*, 365 U.S. 610 (1961) (holding landlord did not have authority to consent to warrantless access to tenant's property through an unlocked window to investigate odor from illegal distillery). Goodfleisch claims the affidavit in support of the second search warrant—specifically, paragraphs 39 through 45 thereof—"clearly and unequivocally relied on the illegally gained information to support probable cause for the search" (ECF No. 119 at 8; *see* Case No. 3:14mj152/CJK, ECF No. 2 at 19–21).    Goodfleisch contends there would have been no incriminating evidence and he would not have been convicted had counsel successfully moved to suppress the evidence seized from his laptop.

In response, the Government argues that two courts—the trial court and the Eleventh Circuit Court of Appeals—found the first warrant to be valid *and* to adequately cover the laptop found in Goodfleisch's room, demonstrating Goodfleisch was not prejudiced by counsel's decision.    The Government is correct. The district court expressed its opinion that the warrant was valid, albeit in the context of ruling on the motion for judgment of acquittal.    The court found that the Government had "a valid warrant and authorization to conduct a search of the entire property, which would have included both buildings," and the fact that law enforcement "proceeded with extra caution in getting a warrant specifically for the additional building [sic] . . . [did] not mean that the initial warrant was invalid" (ECF No. 107 at 2).    More significantly, the Eleventh Circuit found:

> The first warrant, which authorized the officers to search computers found on the property, also covered Goodfleisch's laptop. The officers were searching for evidence of child pornography downloads. Considering the nature of the crime, a search for all computers on the property, including Goodfleisch's laptop, was reasonable.

*Goodfleisch*, 723 F. App'x at 933–34 (citation omitted).    The Government correctly argues that seasoned defense counsel did not perform deficiently by failing to file a motion to suppress the fruits of the second search warrant because the search and seizure was authorized by the first warrant, and that the second warrant was

merely superfluous.   Counsel, of course, does not perform deficiently by failing to file a meritless motion to suppress.   *Hollis*, 958 F.3d at 1124; *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue).   Having failed to show that "no competent counsel would have taken the action that his counsel did take," or that he was prejudiced by counsel's actions, Goodfleisch is not entitled to relief.   *Gordon*, 518 F.3d at 1301 (quoting *Chandler*, 218 F.3d at 1315).

Ground Two—Failure to Investigate and Prepare Alibi Defense

In Goodfleisch's second ground for relief, he contends trial counsel was ineffective because he failed to investigate and prepare a defense to establish that Goodfleisch was not physically present with his laptop computer when "some of" the illegal files were downloaded (ECF No. 119 at 9).   In support of the "deficient performance" prong of the *Strickland* test, Goodfleisch relies on the Eleventh Circuit's finding that counsel would have discovered the "new" alibi evidence before trial had he exercised due diligence in examining the Government's discovery. While this may be true, and assuming for sake of argument it is, Goodfleisch has not met his burden on the "prejudice" prong.

Goodfleisch claims he was prejudiced because the alibi evidence and witness testimony counsel introduced at trial were negated by the discrepancy in the time of the downloads, and additional evidence would have proven he was away from his computer when "some of" the downloads took place (ECF No. 119 at 9, 15).  He identifies six specific instances in which evidence could have shown he was not at home when the downloads occurred (*id*. at 12–14)—the same examples he used in the motion for a new trial (*see* ECF No. 77).

Goodfleisch's argument is unpersuasive.  First, the alibi evidence presented by the defense was not wholly negated by the time discrepancy.  As one example, the defense called a witness, Krisse Hayes, who provided an alibi for Goodfleisch for an *entire weekend*—from a Friday (September 26, 2014) to a Sunday (September 28, 2014) (*see, e.g*., ECF No. 106 at 169–74)—after Mr. Cruz testified a certain file was "last access[ed]" on Goodfleisch's Sony Vaio computer on September 27, 2014 (an access date reflected on Government's Trial Exhibit 15) (ECF No. 106 at 122, 141).  Ms. Hayes's testimony thus clearly established an "alibi" for September 27, 2014.

Ms. Hayes's testimony notwithstanding, Goodfleisch argues that if he had been able to present a verifiable alibi as to one or more times a file was downloaded,

this "would provide reasonable doubt as to whether [Goodfleisch had] downloaded *any* of the illicit files" (ECF No. 124 at 3) (emphasis in original).   Goodfleisch clearly overstates the impact of any additional alibi evidence considering: (1) Ms. Hayes testified to a verified/substantiated alibi (she had text messages proving the weekend-long alibi referenced *supra*) and the jury nevertheless convicted Goodfleisch; (2) the strong evidence of guilt, including the uncontroverted testimony that Goodfleisch attempted to remotely erase incriminating evidence from his computer during law enforcement's execution of the search warrant, his admission to Mr. Jones that he had looked at "child porn," and the fact that his Sony Vaio laptop—which was open, on, and in Goodfleisch's presence when law enforcement entered his room—contained a peer-to-peer program known to be used for the exchange of child pornography (and it was the only computer device on which child pornography was found (*see* ECF No. 106 at 106)); and (3) Goodfleisch's ability to remotely access his computer—a point the Government made or alluded to repeatedly, including during its cross-examination of Ms. Hayes when the Government established Goodfleisch had his cell phone with him but not his laptop when he arrived for the weekend and was away from his home (*id*. at 176), and during its direct examination of Mr. Cruz, the computer expert/analyst (*id*. at 141).

To be sure, trial testimony clearly established Goodfleisch could remotely access his computer—and that he had done so (ECF No. 80 at 9; *see also, e.g.*, ECF No. 106 at 141)).    Goodfleisch argues, however, that there was no evidence at trial showing he remotely accessed his computer *to download an illicit file* (ECF No. 124 at 4), and thus any suggestion he had done so was merely speculative.    While true, this does not negate the existence of testimony establishing he *could* remotely access his computer or that he *in fact did so* on at least two occasions (once by using his own personal iPhone and once by using "Joey's iPhone").

Moreover, as noted in the district court's order denying the motion for a new trial, the receipt of child pornography on just a single occasion would have supported the jury's verdict (ECF No. 80 at 9).    And, as the district court surmised, Goodfleisch did not have alibi evidence for <u>each</u> of the sixty-three occasions on which illegal material was downloaded.

Additionally, trial testimony established that some downloads could take hours to complete (*see, e.g.,* ECF No. 105 at 74–75).    More specifically, Goodfleisch's ex-girlfriend, Jenny Herman, testified that Goodfleisch could start a download, which could take several hours, and leave the computer running while they went out, and the download would be finished when they returned (*id.*; ECF

No. 106 at 179, 186–87).   The undersigned did not locate any testimony stating whether the times of the downloads on the Government's Trial Exhibits reflect the time each download began or the time it ended, and neither party raised the issue, although it is potentially significant.   If the file time reflects the time a file *finishes* downloading rather than when it starts, alibi evidence would be rendered virtually meaningless.   But even if the download times reflect the times a download begins, Goodfleisch has not suggested that alibi evidence existed for each of the sixty-three dates in question or, as explained above, that alibi evidence for some of those dates would have created a reasonable doubt as to whether Goodfleisch downloaded *any* child pornography.   Last, Goodfleisch's argument assumes that his physical proximity to his computer was required in order to download files, but as fully explained herein, such is not the case.

In sum, Goodfleisch has not shown he had a complete or viable alibi defense which would have resulted in a different verdict.   Therefore, despite counsel's erroneous assumption about the time some of the downloads occurred, this court cannot find that Goodfleisch was prejudiced by counsel's actions—or that "defeat was snatched from the hands of probable victory"—particularly considering the abundant evidence against Goodfleisch.   *Morrow*, 977 F.2d at 229.

Conclusion

For the foregoing reasons, the court concludes Goodfleisch has not shown that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.   Nor has he shown that an evidentiary hearing is warranted.   Therefore, Goodfleisch's motion should be denied in its entirety.

Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

Case Nos.: 3:15cr56/TKW/EMT; 3:19cv1353/TKW/EMT

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.    The Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 119) be **DENIED**.

2.    A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 15th day of December 2021.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**